IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce Leibensperger,             :
                Appellant     :
                         :   No. 87 C.D. 2015
           v.               :
                         :   Submitted: May 11, 2016
Carpenter Technologies, Inc.     :
t/a Carpenter Technology Corp.   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge

**_OPINION NOT REPORTED_**

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: September 22, 2016

       Bruce Leibensperger (Appellant) appeals from the December 23, 2014 order of the Court of Common Pleas of Berks County (trial court) granting summary judgment in favor of Carpenter Technologies, Inc. t/a Carpenter Technology Corp. (Employer).[1]

---

[1] While this appeal is not within this Court's appellate jurisdiction under Section 762 of the Judicial Code, 42 Pa.C.S. §762, jurisdiction was perfected pursuant to Section 704(a) of the Judicial Code, 42 Pa.C.S. §704(a), and Pa. R.A.P. 741(a) by the absence of objection before the record was filed here.

## Facts and Procedural History

The following facts are not in dispute. Appellant was hired by Employer in 1972. Appellant worked for Employer in numerous supervisory positions from approximately 1973 until 1996 or 1997, when he voluntarily transferred to a nonsupervisory role to join a newly created inventory disposition department (department) as a "disposition coordinator." (Employment History, Supplemental Reproduced Record (S.R.R.) at 90b.) Jackie Berk joined the department in 2001 and conducted roughly the same job as Appellant. Ms. Berk was hired by Employer in 1979, but, unlike Appellant, never held a supervisory role.

Appellant asked Ms. Berk on May 15, 2003, if she knew of anyone who could refurbish an antique shotgun he found while cleaning his father-in-law's barn. Ms. Berk said that she knew someone and agreed to transport the firearm to the refurbisher's place of business. Appellant and Ms. Berk met in the parking lot owned by Employer the next morning at around 6:50 a.m. to transfer the shotgun to Ms. Berk's control. Appellant took the shotgun out of his trunk and showed it to Ms. Berk. Ms. Berk inspected the shotgun, wrapped it in a towel, and placed it in the trunk of her personal vehicle. Two other employees observed the transfer of the shotgun between the vehicles and reported it to Employer.

Employer has a Workplace Violence Policy (Policy), which provides, in relevant part:

> It is the policy of the Company to provide a safe and secure work environment which is free from threats, threatening behavior, acts of violence, or any other related activity which is disruptive to employees. . . . Bringing a firearm or other dangerous weapon onto [Employer] owned or leased property is considered an intolerable offense for which an employee will be immediately suspended with intent to discharge.

2

(Policy at 1, Reproduced Record (R.R.) at 101a (emphasis omitted).) Employer describes the Policy as a "zero tolerance" policy that was incorporated into training modules used in training managers. (Affidavit of Thomas Reed at 2, S.R.R. at 101b.) Appellant was trained on the Policy on September 13, 2000. (Trial court op. at 2.) Employer also posted its policy on its property and on its internal computer system. (Trial court op. at 2.)

Employer initiated an investigation into the matter. When confronted with the allegations, Appellant told Employer that he thought Ms. Berk should not be held responsible because she was not the person who brought the gun to work. (Appellant's Dep. at 42, R.R. at 90a.) After the investigation concluded, Employer terminated Appellant effective May 19, 2003, for violating the Policy, though it allowed him to retire with full retirement benefits. (Appellant's Letter to Employer, May 28, 2003, Employer's Ex. 25, S.R.R. at 206b.) Appellant was fifty-three at the time of his discharge. Employer suspended Ms. Berk until May 22, 2003, and gave her a written warning. In a disciplinary letter to Ms. Berk, Employer notified Ms. Berk that her continued employment was made contingent upon her participation in a year-long Employee Assistance Program and that any deviation from the Policy in the future would result in immediate discharge. (Disciplinary Memo, May 22, 2003, S.R.R. at 204b.)

After his discharge, Appellant wrote a letter to Employer explaining his disagreement with his termination. The letter reads, in relevant part:

> I was discharged for an incident which can only be described as an error in judgment and/or ignorance. I found an old shotgun while cleaning out my father-in-laws [sic] corn bin and brought it to work for a co-worker to have it possibly restored. The gun was rusty, had no shells, [sic] did not know the caliber and later found the firing pin was bent for the left chamber. By definition, this gun was 'inoperative' and should not be considered a 'firearm.'

3

Knowing I could not bring it into the building I worked in (Bldg 33) but not knowing the parking lot was deemed Carpenter property, I put the gun into my co-worker's car - again for the sole purpose of having it restored - if possible. Not realizing I was doing anything wrong, I hid nothing during the transfer from my truck to the co-worker's car. Even when another employee pulled into the parking lot did I try to hide what I was doing? [sic] Why should I? I did not think I was doing anything wrong. Several hours later, I was confronted and asked what transpired and was told that I was being suspended with intent to discharge. I was dumbfounded, speechless, and deeply distraught. When asked what had happened, I willfully told the whole story; omitting nothing! The co-worker corroborated (my story). Ultimately, on 5/19/03, I was discharged.

(Letter from Appellant to Employer, May 28, 2003, S.R.R. at 206b.) Employer did not reinstate Appellant.

Instead, Appellant initiated this action in July 2006 through a Praecipe for Writ of Summons and a subsequent Complaint filed with the Court of Common Pleas of Delaware County on October 23, 2006.[2] In his Complaint, Appellant alleged that "[Employer] terminated [Appellant] from employment for [a] rule violation but was not as severe in punishing the younger female employee, who had an identical position to that of [Appellant] as part of the employment with [Employer]." (Compl.

---

[2] Previous to this action, Appellant sought relief in the United States District Court for the Eastern District of Pennsylvania. Appellant's federal suit was dismissed on June 14, 2005 on the grounds of:

lack of prosecution, due to the failure to file the complaint within ninety days of receipt of the EEOC right to sue letter, due to failure of the plaintiff to make service of the complaint within 120 days of the filing of the complaint and due to the improper attempted service of the complaint on someone who was not an agent of the defendant, all of which has been determined on the state of the current record and without rebuttal evidence from the plaintiff.

(Federal Court Order, June 14, 2005, S.R.R. at 5b.)

¶ 5, S.R.R. at 210b.) Appellant also alleged that he did not violate the Policy or, in the alternative, was not told of the rule against firearms since a firearms sale took place at Employer's premises in 1995.[3] (Compl. ¶ 6, S.R.R. at 210b.) According to the allegations, "[Employer] violated the Pennsylvania Human Relations Act [(PHRA)[4]] and the federal Age Discrimination in Employment Act [(ADEA)[5] by] failing to act without discrimination in punishing and terminating [Appellant]." (Compl. ¶ 9, S.R.R. at 211b.) Appellant further alleged that Employer "committed acts of intentional illegal discrimination against [Appellant] by reason" of sex and age. (Compl. ¶ 10, S.R.R. at 211b.)

On November 10, 2006, Employer filed Preliminary Objections (POs) to Appellant's Complaint alleging, *inter alia*, improper venue. The Court of Common Pleas of Delaware County granted the POs and transferred the case to the trial court. On November 17, 2008, Employer filed an Answer and New Matter to Appellant's Complaint. The case stalled in discovery for four years. After the trial court issued a Notice of Proposed Termination on October 15, 2012, Appellant filed a Statement of

---

[3] Employer actually held two commemorative firearms sales. The first was a commemorative revolver sale in 1989 commemorating Employer's 100th year of business. (Employer's Memo to Staff on Revolver Sale, Employer's Ex. 20, at ## 1-3, R.R. 138a-42a.) There is no evidence in the record showing that the Policy was in effect at the time of the 1989 sale. Employer then held a collectable rifle sale on December 1996. (Employer's Memo to Staff on Commemorative Rifle Sale, Employer's Ex. 20, at ## 4-5, R.R. 146a.) Appellant's Complaint and Memorandum of Law in Response to Defendant's Motion for Summary Judgment (Memorandum of Law) only mentions a sale in 1995/96. (Compl. ¶ 6, S.R.R. at 210b; Memorandum of Law at 8, R.R. at 179a.) Although evidence shows that the current Policy was enacted in 1999, the evidence also shows that Employer had a similar workplace violence policy in place as early as 1996. See Employer's Memo to Staff on Commemorative Rifle Sale, Employer's Ex. 20, at #5, R.R. at 146a (stating: "it is against company policy to have a firearm on company premises").

[4] Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §§ 951 – 963.

[5] 29 U.S.C. §§ 621 – 634.

5

Intention to Proceed on November 2, 2012. The case stalled once again until, on July 11, 2014, the trial court issued a Rule to Show Cause why the case should not be dismissed for inactivity and held a hearing on September 17, 2014 about moving the case forward.

On October 30, 2014, Employer filed the instant Motion for Summary Judgment (Motion). In its Motion, Employer alleged summary judgment is appropriate because Appellant "cannot sustain his burden with respect to his claims of age discrimination and sex discrimination. . ." (Motion ¶ 28, R.R. at 14a.) Appellant filed an Answer to the Motion wherein he alleges that summary judgment is not appropriate because genuine issues of material fact are at issue. (Appellant's Response to Motion for Summary Judgment (Answer) ¶ 20, R.R. at 168a.) Appellant alleges that his actions were not egregious and that he did not think he violated the Policy. (Answer ¶¶ 8, 12, R.R. at 164a-65a.) Appellant alleges that the firearm at issue was a "non-functioning, rusty, antique gun" that could not be used for workplace violence. (Answer ¶ 8, R.R. at 164a.) He also argues that he legitimately thought he was not violating the Policy because Employer itself chose to distribute functioning collectable firearms on its property in the past. (Answer ¶ 18, R.R. at 168a.)

Appellant disputes that the Policy is a "zero tolerance policy" and identifies two comparators who received less harsh punishments for violating the Policy. According to Appellant's Answer and accompanying Memorandum of Law, Ms. Berk and Appellant were involved in identical conduct, held roughly the same position, and were treated differently based on age and sex. (Appellant's Memorandum of Law in Response to Defendant's Motion for Summary Judgment (Memorandum of Law at 4, 13, 17, R.R. at 175a, 184a, 188a.)) Appellant also identifies two male employees that brought weapons to work and were not fired.

6

(Answer ¶ 13, R.R. at 166a; Memorandum of Law at 9, R.R. at 180a.) One of these two men, Mr. Marko, was thirty-two years of age at the time of the incident. (Employer's Answer to Appellant's Second Set of Interrogatories ¶ 3(b), S.R.R. at 237b.) Mr. Marko and the other man brought hunting bows onto the property and were suspended with the intent to discharge. (Employer's Exs. 30, 31, S.R.R. at 241b-46b.) Instead of having their employments terminated, Mr. Marko and the other man were moved to the third step in Employer's Corrective Performance System. (Employer's Exs. 30, 31, S.R.R. at 242b, 245b.) Appellant contends that these facts, in addition to the fact that Appellant was replaced by a woman, give rise to the presumption of illegal sex and age discrimination. (Memorandum of Law, R.R. at 188a.)

## Trial Court Decision

Upon review of Employer's Motion, Appellant's Answer, and the evidence attached thereto, the trial court held that Employer was entitled to summary judgment because Appellant failed to make out a prima facie case of discrimination and that Employer's reason for terminating Appellant was legitimate and nondiscriminatory. According to the trial court:

> It is uncontroverted that plaintiff violated the Policy regarding firearms. Policy is a zero tolerance policy. [Appellant] brought a shotgun to work in his vehicle which he parked on [Employer]'s parking lot. The reason that he did so is immaterial. [Appellant] was seen by another employee who reported the violation. [Employer]'s reason for terminating plaintiff for violating [Employer]'s written Policy was a legitimate, nondiscriminating reason for his termination that has nothing at all to do with plaintiff's age or gender. This reason rebuts [Appellant]'s *prima facie* case of age and sex discrimination. Among plaintiff's claims for relief, he alleged defendant discriminated against

7

him because he was a man. This court also finds this claim to be without merit.

Ms. Berk was not terminated because there was no conclusive evidence that she knew about the Policy. Unlike [Appellant], she had never been a supervisor so she had never enforced the Policy. There was also no indication that she had ever taken any training sessions on workplace violence, unlike [Appellant]. . . . There is no evidence that the gun was inoperable. Even assuming arguendo that it was not operational, the Policy makes no distinction between operable or inoperable firearms.

Ms. Berk is approximately eight years younger than [Appellant]. Thus, she is not "substantially younger" than plaintiff as he submits. Besides [Appellant]'s assertion that defendant committed age or sex discrimination, there is no evidence to support these claims.

[Appellant] further contends that he was discriminated against because younger employees brought dangerous weapons to work and were not fired. These employees were men who brought hunting bows in their vehicles onto defendants property. These employees were not supervisory; they were hourly employees and punished accordingly. These men were suspended and moved to the third step of the Corrective Performance System. The men were not similarly situated to [Appellant]. They were hourly employees who were not aware that the prohibition applied to hunting bows. Moreover, Policy expressly states "firearms" are forbidden, but hunting bows are not specifically designated in Policy but fall under "other dangerous weapon."

For these reasons, this court found that there was no evidence to support [Appellant]'s claims of sex and age discrimination.

(Trial court op. at 6-7.) This appeal followed.

8

## Discussion

On appeal,[6] Appellant contends that the trial court erred by: (1) using an erroneous standard of review; (2) concluding that Appellant did not meet his burden of presenting a prima facie case of discrimination; (3) holding that there was no genuine issue of material fact as to Employer's proffered justification for Appellant's termination; and (4) concluding that Employer's nondiscriminatory justification for Appellant's termination was not pretext for illegal discrimination.

## Standard of Review

Summary judgment is proper when, after pleadings are closed: (1) "there is no genuine issue of any material facts as to a necessary element of the cause of action or defense"; or (2) after the completion of relevant discovery "an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1035.2. When considering a motion for summary judgment, a common pleas court must examine all facts and reasonable inferences

---

[6] "Our standard of review of the grant of summary judgment is *de novo* and our scope of review is plenary." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011). The Pennsylvania Supreme Court has summarized our standard of review as follows:

> Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party.

*Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221-22 (Pa. 2002) (internal citations omitted).

deduced therefrom in a light most favorable to the non-moving party and "may only grant summary judgment where the right to such judgment is clear and free from all doubt." *Summers v. Certainteed Corporation*, 997 A.2d 1152, 1159 (Pa. 2010) (internal quotations omitted).

In determining whether summary judgment is appropriate for employment discrimination cases, Pennsylvania has adopted the analytical model established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973) applicable when there is an absence of direct proof of discrimination. Under *McDonnell Douglas*:

> the complainant bears the burden of establishing a [prima facie] case by showing that: (i) he is in a protected class; (ii) he is qualified for the position; (iii) he suffered an adverse employment action; and (iv) he was discharged under circumstances that gave rise to an inference of discrimination. Once the complainant makes this initial case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory motive for its action. If the employer does so, the complainant is then given the opportunity to demonstrate that the proffered reasons were pretextual.

*Spanish Council of York, Inc. v. Pennsylvania Human Relations Commission*, 879 A.2d 391, 397 (Pa. Cmwlth. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802). Although the burden of production shifts under the *McDonnell Douglas* test from a complainant to a defendant and then back again to complainant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the [complainant] remains at all times with the [complainant]." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Appellant first contends that the trial court erred by not resolving all doubts in Appellant's favor and by requiring Appellant to *prove* discrimination.

Upon review, we see no instances where the trial court required Appellant to directly prove discrimination or resolved doubts in favor of Employer. The trial court, by tracking the analytical steps outlined in *McDonnell Douglas*, applied the correct standard of review and concluded that Appellant did not adduce sufficient evidence to show that the circumstances "gave rise to an inference of discrimination." *Spanish Council of York*, 879 A.2d at 397.

We also understand the trial court's decision as holding that, even if Appellant established a prima facie case, "[Employer]'s reason for terminating plaintiff for violating [Employer]'s written Policy was a legitimate, nondiscriminating reason for his termination. . . [that] rebuts [Appellant]'s *prima facie* case of age and sex discrimination." (Trial court op. at 6.) The trial court concluded that, even when resolving doubts in Appellant's favor, Appellant did not present probative evidence showing that Employer's stated reason for his termination was unworthy of credence or pretext for a discriminatory motive, *Torre v. Casio, Inc.*, 42 F.3d 825, 832 (3d Cir. 1994). (Trial court op. at 8 (stating "[Appellant]'s affidavit does not rise to the level of probative evidence to prove that defendant discriminated against plaintiff").) Accordingly, we conclude that the trial court applied the correct standard of review.

Whether the trial court erred by concluding that no material facts were in dispute, and that Appellant neither presented a prima facie case of discrimination nor rebutted Employer's justification for Appellant's termination, are issues subject to our *de novo* review. *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 903 (Pa. 2007). We shall now proceed to Appellant's arguments in these regards.

**Discrimination under the PHRA**

Appellant asserts claims under the PHRA for age and sex discrimination and claims under the federal ADEA for age discrimination. Both Acts prohibit

11

discrimination based on age, and the PHRA also prohibits discrimination based on sex. *See* Section 5(a) of PHRA, 43 P.S. § 955(a) (stating: "It shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age, sex, . . . to refuse . . . to discharge from employment such individual . . . if the individual or independent contractor is the best able and most competent to perform the services required"); Section 623(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1) (stating: "It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age"). "[C]laims brought under the PHRA are analyzed under the same standards as their federal counterparts." *Kroptavich v. Pennsylvania Power and Light Company*, 795 A.2d 1048, 1055 (Pa. Super. 2002).

### Stage One of the *McDonnell Douglas* Analysis

The trial court concluded, and we agree, that Appellant has put forth credible evidence satisfying the first three requirements of a prima facie case of discrimination: that he is a member of a protected class, that he is qualified for the position, and that he suffered an adverse employment action. (Trial court op. at 4-5.) Appellant challenges the trial court's conclusion that he did not present a prima facie case of age or sex discrimination because a reasonable factfinder could not have concluded that Appellant was discharged under circumstances that gave rise to an inference of discrimination. (Trial court op. at 6.)

A complainant establishes that the circumstances give rise to an inference of discrimination by demonstrating, *inter alia*, that the complainant was discharged and replaced by someone outside of his protected class, *Kroptavich*, 795 A.2d at 1056, and "that similarly situated employees were not treated equally."

12

*Burdine*, 450 U.S. at 258. Whether the circumstances raise an inference of discrimination is not a rigid test and must be tailored to differing factual circumstances. *McDonnell Douglas*, 411 U.S. at 802 n.13.

The United States Court of Appeals for the Fifth Circuit explained the test for whether a comparator is similarly situated in employment discrimination cases as follows:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v. Kansas City Southern Railway Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (internal citations omitted) (emphasis in original). Whether a comparator is similarly situated is generally a question of fact for a factfinder. *Abdul-Latif v. County of*

13

*Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014) (citing *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004).) However, summary judgment is appropriate when "there is no evidence from which a [factfinder] could conclude the parties were similarly situated." *Id.*

Central to our resolution of this issue is our acknowledgment that the burden on the complainant of presenting a prima facie case is minimal. *Kroptavich*, 795 A.2d at 1055. The purpose of the prima facie showing is simply to "eliminate[] the most common nondiscriminatory reasons for the [complainant's termination]." *Burdine*, 450 U.S. at 254. According to the Pennsylvania Supreme Court:

> in the interest of having the ultimate question of discrimination resolved on the merits rather than for procedural failings such as lack of specificity, given the importance of circumstantial proof in such cases, it is appropriate to the remedial purpose of the Act that the prima facie case not be an onerous one.

*Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission*, 532 A.2d 315, 319 (Pa. 1987).

We agree with the trial court that Mr. Marko is not a sufficient comparator because, unlike Appellant, he was an hourly employee who never held a supervisory position, was not employed in the same position as Appellant and held different responsibilities, and did not bring a firearm onto the premises. However, we conclude that, at the time of the adverse employment action, Ms. Berk and Appellant were similarly situated. Appellant and Ms. Berk worked for the same supervisor, performed roughly the same job duties, and were both punished for violating the Policy. Because the burden at this stage of the *McDonnell Douglas* analysis is minimal, we conclude that Appellant adduced facts which a reasonable factfinder

14

could conclude showed Ms. Berk is a sufficient comparator and that the circumstances raise an inference of sex or age discrimination. Hence, we move to the next stage of the *McDonnell Douglas* analysis.[7]

### Stage Two of the *McDonnell Douglas* Analysis

Where a prima facie is established, it "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254. A "prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* (internal quotation and citation omitted). This inference of discrimination is rebutted if the employer proffers a legitimate, nondiscriminatory reason for the adverse employment action. *Kroptavich*, 795 A.2d at 1055.

> The employer's burden in this second part is one of production, not persuasion, and thus involves no credibility assessment. If the employer articulates a legitimate business explanation, then the presumption of discriminatory intent created by the employee's [prima facie] case is rebutted and the presumption simply drops out of the picture.

*Id.* (internal citations and quotations omitted). "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. So long as the proffered reason for Appellant's discharge is "legally sufficient

---

[7] Appellant also contends that an inference of sex discrimination arises by the fact that, upon his discharge, his position was filled by a woman named Pam. Appellant previously argued that Pam was 15-20 years younger than him, but Employer proffered evidence showing that Pam was the same age as Appellant. (Employer's Response to Appellant's Second Set of Interrogatories ¶ 1(o), R.R. at 285a.) However, there is nothing in the record, other than Appellant's contentions, showing that Pam replaced Appellant and Employer is entitled to summary judgment on this issue.

to justify a judgment for the defendant" the presumption of discrimination "raised by the prima facie case is rebutted." *Id.* at 255.

Employer points to Appellant's alleged violation of the Policy as a legitimate nondiscriminatory justification for Appellant's discharge. Certainly, there can be no dispute that an employer may terminate an at will employee for violating a policy prohibiting firearms on employer's property. Because the burden here is one of production, not persuasion, Employer has rebutted any presumption that it discriminated against Appellant.

However, the matter does not end here. If an employer satisfies the second step, the burden shifts back once more to the complainant to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual. *Willis v. UPMC Children's Hospital of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). Thus, we turn to the final stage of the *McDonnell Douglas* analysis.

## Stage Three of the *McDonnell Douglas* Analysis

The next stage questions whether Appellant adduced sufficient probative evidence showing that Employer's proffered reason for his termination was "pretext for what, in reality, was a discriminatory motivation." *Kroptavich*, 795 A.2d at 1055. There are two ways in which a complainant can demonstrate that the employer's legitimate, nondiscriminatory reason was pretextual. The first way to show pretext is for the complainant to point to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action. *Willis*, 808 F.3d at 644 (citation omitted). In order to raise sufficient disbelief, the complainant must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action." *Kroptavich*, 795 A.2d at 1059 (citations omitted).

The second way a complainant can establish pretext is to point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was "more likely than not a motivating or determinative cause" of the employer's action. *Willis*, 808 F.3d at 645 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). A complainant can show pretext this way by presenting evidence "with sufficient probative force" so as to allow the factfinder to "conclude by a preponderance of the evidence that age was a motivating or determinative factor." *Willis*, 808 F.3d at 645 (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 644-45 (3d Cir. 1998)). As the Court in *Willis* explained, "[p]ointing to evidence demonstrating any of the following satisfies this second way to prove pretext: (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." *Id.* at 645 (citations omitted). If this step is satisfied, at trial the complainant must convince the factfinder that not only was the employer's proffered reason false, but the real reason was impermissible discrimination. *Id.*; see also *Fuentes*, 32 F.3d at 763.

In other words, a complainant may survive summary judgment and proceed to a factfinder, even if he cannot show that the employer was motivated by discrimination, if the complainant shows that employer's proffered reason for the adverse employment decision "was so plainly wrong that it cannot have been the

employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

In the present case, the trial court concluded that "Ms. Berk was not terminated because there was no conclusive evidence that she knew about the Policy," as she had never been a supervisor or taken any training sessions on workplace violence, unlike Appellant. *Id.* However, the record reveals that Ms. Berk had been employed with Employer since 1979, that a similar Policy had been in effect as early as 1996, which was equally applicable to all of Employer's employees, and that Employer posted the Policy on its property and its internal computer system. Thus, the fact that Ms. Berk was never a supervisor and never enforced the Policy does not support a conclusion that she was unaware of the existence of the Policy.

Additionally, Appellant testified that the firearm in this case was an inoperable, rusty, antique shotgun that he found while cleaning out his father-in-law's barn and that he brought it to Ms. Berk because she knew someone who could refurbish it. Indeed, Carl Roth, then Employer's administrator of asset protection, inspected the shotgun on May 16, 2003, and described it as "not functional" at that time. (R.R. at 197a.) Hence, there is a question whether the Policy is even applicable to this shotgun.

Moreover, the trial court recognized Appellant's claim that other younger employees brought "dangerous weapons to work and were not fired." (Trial court op. at 7.) In fact, the trial court specifically stated that these employees "brought hunting bows in their vehicles onto [Employer's] property." *Id.* While the trial court ultimately discounted the actions of these employees because they were "not similarly situated to [Appellant]" and "were not aware that the prohibition applied to hunting bows," *id.*, certainly a hunting bow could fall within the ambit of

18

the Policy as an "other dangerous weapon." (R.R. at 101a.) Appellant similarly believed that the inoperable, rusty shotgun was not prohibited under the Policy.

Furthermore, the record herein presents another issue as to the extent of the prohibition in the Policy, i.e., whether it applies to Employer's parking lot, its buildings, or both. This issue arises as a result of two prior commemorative firearms sales on Employer's property, one in 1989 and another in 1996, both during the course of Appellant's employment. A predecessor to the Policy, which contained similar language prohibiting firearms, was in effect at the time of the 1996 sale. A memo from Employer preceding this sale reminded employees that it was against company policy to have a firearm on company premises. However, this memo advised employees that "[i]f you must pick up your rifle at any other time than when you are leaving work, you must keep the rifle secured in your vehicle. Under no circumstances may a firearm be taken into any office or mill area." (R.R. at 146a.) The language of this memo seems to imply, as Appellant appears to have believed, that Employer's parking area did not constitute a part of the property where firearms were prohibited.

Given the disparate treatment of other employees as compared to Appellant,[8] as well as the potentially ambiguous nature of Employer's Policy, a

---

[8] The Dissent relies on *Simpson v. Kay Jewelers, Division of Sterling, Inc.*, 142 F.3d 639 (3d Cir. 1998), which is distinguishable because in that case, the complainant picked only "one valid comparator who was allegedly treated more favorably, and completely ignore[d] a significant group of comparators who were treated equally or less favorably than she." *Id.* at 647; *see* Dissent op. at 4. Here, by contrast, the record establishes that, although a variety of individuals arguably violated the Policy, Appellant was the only person who was terminated for doing so.

Perhaps more importantly, the Dissent admits that Appellant and Berk are sufficient comparators who engaged in substantially similar conduct, but, contrary to our standard of review, appears to view the evidence in the light most favorable to Employer to find that Employer was justified in imposing a less severe disciplinary sanction on Berk because Berk's conduct "was not as egregious as Appellant's violation." Dissent op. at 4. However, the issue of whether Appellant and
**(Footnote continued on next page…)**

19

reasonable factfinder could conclude that Appellant did not violate Employer's Policy by bringing an inoperable gun onto Employer's parking area and that Employer's

---

**(continued…)**

Berk should have received the same punishment for substantially the same conduct is a factual matter that is traditionally left to the province of the factfinder. *See* Dissent op. at 4-6, *and compare with Coleman v. Donahoe*, 667 F.3d 835, 846-47 (7th Cir. 2012) ("Whether a comparator is similarly situated is usually a question for the fact-finder . . . .") (citation and internal quotation marks omitted); *Graham v. Long Island Rail Road*, 230 F.3d 34, 40 (2d Cir. 2000) ("[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical."). *See also McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 283 n.11 (1976) (stating that "precise equivalence in culpability between employees is not the ultimate question.").

The Dissent also states that "Appellant's admission that *the different treatment was justified*, and *advocacy in support of different treatment of Ms. Berk*, necessarily precludes a finding that Ms. Berk's different treatment shows that Employer's proffered reason for its action is pretext." (Dissent op. at 5) (emphasis in original). Although Appellant testified that he assumed full responsibility for the incident and pled for Berk to keep her job *after* Employer informed him that he was being suspended with the intent to terminate, Appellant also testified that he first informed Employer that neither he nor Berk should be terminated for the incident. (R.R. at 89a-90a.) While the alleged "unfavorable" portion of Appellant's testimony, Dissent op. at 6 n.2, if credited by the factfinder, may corroborate Employer's proffered reasons for the discharge, it does not conclusively prove that Employer's difference in treatment was justified as a matter of law and/or preclude Appellant from proving pretext, especially where Employer claims that it has a "zero tolerance" Policy. Moreover, the alleged unfavorable portion of Appellant's testimony could be found by the factfinder to be not credible and/or deserving a little to no evidentiary weight. *See Commonwealth v. Roux*, 350 A.2d 867, 870 n.3 (Pa. 1976) ("[I]t is well-settled that the finder of fact may believe all or a part of or none of the testimony of any witness. Therefore, the finder of fact was free to disregard [witness's] testimony in whole or in part."). Thus, the Majority does not ignore what the Dissent describes as "highly probative evidence," Dissent op. at 6 n.2; rather, the Majority believes that the probative value of Appellant's testimony is completely dependent upon the factfinder's credibility and weight determinations. Significantly, under our standard of review from the grant of summary judgment, "the court must disregard all evidence favorable to the moving party that the [factfinder] is not required to believe," *Reeves v. Sanderson Plumbing*, 530 U.S 133, 150-51 (2000), including portions of Appellant's testimony, *Roux*, 350 A.2d at 870 n.3, and "it has long been the rule in Pennsylvania that where the testimony of the party having the burden of proof is oral, the credibility of that testimony is always for the [factfinder]." *Bremmer v. Protected Home Mutual Life Insurance Co.*, 260 A.2d 785, 786 (Pa. 1970).

20

proffered reason for terminating Appellant's employment was pretext for discrimination.

## Conclusion

Viewing the evidence in a light most favorable to Appellant, the non-moving party, we conclude that he has put forth credible evidence satisfying the requirements of a prima facie case of discrimination such that a reasonable factfinder could conclude that Employer's proffered reason for terminating Appellant's employment was pretextual. Because genuine issues of material fact remain to be decided in this case, the trial court's grant of summary judgment in Employer's favor was improper.

Accordingly, the order of the trial court is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce Leibensperger,               :
                        Appellant     :
                                    :   No. 87 C.D. 2015
              v.             :
                                    :
Carpenter Technologies, Inc.      :
t/a Carpenter Technology Corp.    :

## *ORDER*

AND NOW, this 22nd day of September, 2016, the order of the Court of Common Pleas of Berks County (trial court), dated December 23, 2014, is hereby reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce Leibensperger,                      :
                    Appellant             :
                                          :
          v.                              :   No. 87 C.D. 2015
                                          :   Submitted:  May 11, 2016
Carpenter Technologies, Inc.              :
t/a Carpenter Technology Corp.            :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


## OPINION NOT REPORTED

**DISSENTING OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED:  September 22, 2016**

I agree with the Majority's conclusion that Bruce Leibensperger (Appellant) met his prima facie case of sex discrimination by producing evidence showing the disparate treatment of his co-worker Jackie Berk by Carpenter Technologies, Inc. (Employer).  However, because I believe that the evidence presented, if admissible at trial, is not sufficient for Appellant to meet his burden of proving that Employer's proffered justification for its action was pretext for illegal discrimination, I, respectfully, dissent.

Central to my disagreement with the Majority is my understanding of this Court's role at the pretext phase of the analytical model established by the United

States Supreme Court in <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792, 802 (1973). Under this model, the burden is on the complainant to produce evidence with sufficient probative force showing that the employer's proffered reason for its action did not motivate the employer's action, and that the discrimination was a determinative factor. <u>Kroptavich v. Pa. Power & Light Co.</u>, 795 A.2d 1048, 1059 (Pa. Super. 2002). It is not for this Court to act as "arbitral boards ruling on the strength of 'cause' for discharge." <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting <u>Carson v. Bethlehem Steel Corporation</u>, 82 F.3d 157, 159 (7th Cir. 1996)). Our role is to determine whether a reasonable factfinder could conclude, by a preponderance of the evidence, that the proffered reason for the adverse employment action is *false* and that the real reason for action was unlawful discrimination. <u>Id.</u> The United States Court of Appeals for the Seventh Circuit aptly explains the court's role at the pretext phase as determining, in light of the evidence presented by the complainant, whether a reasonable factfinder could conclude that *"the employer's proffered reason was pretextual, meaning that it was a lie."* <u>Ransom v. CSC Consulting, Inc.</u>, 217 F.3d 467, 471 (7th Cir. 2000) (emphasis added).

I do not believe the Majority's analysis complies with these principles because it does not require Appellant to adduce evidence showing that Employer's proffered justification – namely, that Appellant violated Employer's Workplace Violence Policy (Policy) – was a lie, and did not motivate Employer's behavior. The Majority holds, in relevant part, as follows:

> Given the disparate treatment of other employees as compared to
> Appellant, as well as the potentially ambiguous nature of Employer's
> Policy, a reasonable factfinder could conclude that Appellant did not
> violate Employer's Policy by bringing an inoperable gun onto

Employer's parking area and that Employer's proffered reason for terminating Appellant's employment was pretext for discrimination.

Leibensperger v. Carpenter Tech., Inc., __ A.3d ___ (Pa. Cmwlth., 87 C.D. 2015, filed September 22, 2016), slip op. at 20.

The evidence pointed to by the Majority to support its conclusion does not satisfy either of the two approaches for showing that Employer's proffered reason is pretext for illegal discrimination: the evidence neither shows (1) that Employer's proffered reason is so plainly wrong "that a reasonable factfinder could rationally find [it] 'unworthy of credence'"; nor, (2) that the real reason for his discharge was discrimination based on age or sex. Keller, 130 F.3d at 1109 (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)). First, although I agree with the Majority that Appellant and Ms. Berk are comparators for purpose of establishing a prima facie case of sex discrimination, there is a different standard to be used at the *pretext* stage. A complainant need not, "as a matter of law, . . . produce evidence in excess of that produced in a prima facie case in order to prevail" at the pretext stage. Kroptavich, 795 A.2d at 1059. Yet, because evidence *must be assessed in light of the different questions posed at the different stages* of the McDonnell Douglas analysis, evidence sufficient to raise an inference of discrimination at the prima facie stage may be *insufficient* to show that an employer's proffered justification for its action is pretext for illegal discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 516 (1993) (explaining the pretext stage analysis as "turn[ing] *from* the few generalized factors that establish a prima facie case *to* [assessing] the *specific proofs and rebuttals of discriminatory motivation* the parties have introduced") (emphasis added); Kroptavich, 795 A.2d at 1059 (stating that "inferences acceptable at the prima facie stage *may not satisfy the higher level of specificity usually required at the pretext stage*") (emphasis

RCJ - 3

added); <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 646 (3d Cir. 1998) (explaining that evidence showing more favorable treatment of a single member of a non-protected group that satisfies a complainant's burden at the *prima facie stage*, "where the inquiry is based on a few generalized factors," may *not be sufficient* "*at the pretext stage* where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity") (emphasis added).

Appellant has not met his burden to show that Employer's disparate treatment of Ms. Berk could lead a rational factfinder to conclude that Employer's proffered justification for its action was pretext for illegal discrimination.[1]  In arguing that its decision to terminate Appellant was motivated by the Policy, Employer acknowledges that Ms. Berk was treated differently, but contends that this disparate treatment was justified as Ms. Berk's violation of the Policy was not as egregious as Appellant's violation.  The Policy states "*[b]ringing* a firearm or other dangerous weapon onto [Employer] owned or leased property is considered an intolerable offense for which an employee will be immediately suspended with intent to discharge."  (Policy at 1, R.R. at 101a (emphasis added).)  Appellant appears to recognize this distinction.  When questioned by Employer in his deposition, Appellant stated as follows.

> Q:  During the meeting with [Employer's investigator], did you make any statements to [Employer's investigator] about what you thought should happen to [Ms.] Berk because of this incident?

---

[1] The potentially disparate treatment of Mr. Marko, who allegedly brought bows onto Employer's parking lot, is not at issue in the pretext phase as the Majority correctly holds that Mr. Marko is not a sufficient comparator to Appellant.  <u>Leibensperger</u>, __ A.3d at ___, slip op. at 15.

[Appellant]:  I remember in not so many words indicating when they told me that I was being suspended with the intent to terminate, my first thing was that it should not happen to myself and/or [Ms.] Berk. It should not -- she should not be held accountable for this.

Q:  Did you remember telling [Employer's investigator] that you asked that she not lose her job because you were the person responsible for bringing the gun?

[Appellant]:  Well, I did bring the gun so I was responsible for bringing the gun.

Q:  That's not my question.  I'm asking -- thank you.  But what I asked you is did you tell [Employer's investigator] that you thought that she should not be held responsible because she was not the person who brought the gun to work?

[Appellant]:  Yes.

(Appellant's Dep. at 41-42, R.R. at 89a-90a.)  While Employer's decision to not treat Ms. Berk and Appellant equally may support an inference of discrimination at the *prima facie stage* of the McDonnell Douglas analysis, Appellant's admission that *the different treatment was justified,* and *advocacy in support of different treatment of Ms. Berk,* necessarily precludes a finding that Ms. Berk's different treatment shows that Employer's proffered reason for its action is pretext.  Because Appellant has offered no other evidence showing that Employer's reliance on the Policy was a cover-up for illegal discrimination, this Court must grant summary judgment to Employer.[2]  See Ertel v. Patriot-News Co., 674 A.2d 1038, 1042 (Pa.

---

[2] The Majority states that the Dissent "appears to view the evidence in the light most favorable to Employer to find that Employer was justified in imposing a less severe disciplinary sanction on Berk because Berk's conduct 'was not as egregious as Appellant's violation.'" Leibensperger, __ A.3d at ___, slip op. at 20 n.8.  The section of this Dissent quoted by the Majority is a summary of *Employer's argument*, not the Dissent's conclusion that Employer's action was justified.  It is not for this Court to make a judgment on the wisdom of Employer's action.  The Dissent simply concludes that Appellant cannot meet his burden of proving that

*(Continued…)*

RCJ - 5

1996) (holding the failure of "a non-moving party [to] adduce sufficient evidence on an issue . . . on which he bears the burden of proof" "establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law").

Second, the Majority concludes that a reasonable factfinder could conclude that Employer's proffered justification was pretext for illegal discrimination because the Policy was "potentially ambiguous" and because a reasonable factfinder could conclude that Appellant did not violate the Policy by bringing an inoperable firearm onto the parking lot. Leibensperger, __ A.3d at ___, slip op. at 19-20. This reasoning is misplaced. Whether the Policy was clear and understood by Appellant, and whether Employer correctly applied the Policy is not relevant at the pretext stage of the McDonnell Douglas analysis. According to the United States Court of Appeals for the Third Circuit, to survive summary judgment at the pretext stage, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. The only question before the factfinder is whether the evidence shows that Employer's proffered justification is a lie and that the discriminatory animus motivated the action.

---

Employer's articulated justification was pretext for sex discrimination based solely on evidence that Ms. Berk was treated differently when Appellant's deposition testimony establishes that *Appellant advocated for Ms. Berk to be treated differently based on her conduct*, not her sex. The Majority completely ignores this highly probative evidence. Our standard of review provides no justification for ignoring Appellant's unfavorable deposition testimony. We are to look at the evidence in the light most favorable to the non-moving party; this does not mean that we *only* look at evidence that is favorable to the non-moving party and disregard the rest.

Furthermore, even if the evidence could lend itself to prove that Employer's proffered justification is pretext for illegal discrimination, Appellant still falls short of meeting his burden. The Majority concludes that because Mr. Marko and the other man were not fired for bringing hunting bows onto Employer's parking lot, Appellant could have reasonably believed that the Policy did not apply to his firearm, and that Appellant possibly did not violate the Policy. No reasonable factfinder could conclude that Appellant did not violate the Policy from the treatment of these men because, as the Majority notes, Mr. Marko and the other man were, in fact, punished for violating the Policy, albeit less harshly than Appellant was punished. Leibensperger, __ A.3d at ___, slip op. at 7 (citing Employer's Exs. 30, 31, S.R.R. at 242b, 245b.)

The Majority finds the evidence showing that Appellant's firearm was not operable particularly probative of discriminatory animus. However, the Policy makes no distinction concerning whether or not a dangerous weapon is operable. The intent of the Policy, noted in the Policy itself, is "to provide a safe and secure work environment which is free from threats, threatening behavior, acts of violence, or any other related activity which is disruptive to employees." (Policy at 1, R.R. at 101a.) Employer's belief that an inoperable firearm, when brandished at another employee, is just as threatening and disruptive as an operable one, is not so plainly wrong that a reasonable factfinder could conclude that Employer's reliance on the Policy to justify its action was unworthy of credence.

Finally, no reasonable factfinder could conclude that Employer's justification was unworthy of credence by the fact that Employer made a one-time exception to the Policy in 1996 for the distribution of a special edition commemorative rifle. Employer presented evidence showing that the 1996 rifle

sale was a one-time exception to the Policy.[3]  Employer wrote a memo to its staff prior to the 1996 collectible rifle sale outlining when and where individuals should pick up the pre-ordered rifle.  The memo contained the following language:

> Please remember that it is against company policy to have a firearm on company premises.  If you must pick up your rifle at any other time than when you are leaving work, you must keep the rifle secured in your vehicle.  Under no circumstances may a firearm be taken into any office or mill area. *This exception to the policy will only apply to the distribution of the Ruger rifles and will not apply under any other circumstances.*

(Employer's Memo to Staff on Commemorative Rifle Sale, Employer's Ex. 20, at #5, R.R. at 146a) (emphasis added).  Employer's one-time exception to the Policy, clearly communicated to employees as an exception, does not preclude Employer from applying the Policy years later under very different circumstances.

In sum, I see no evidence by which a reasonable factfinder could conclude that Employer's proffered justification was a lie, nor that the actual motive for discharging Appellant was age or sex.  I would, therefore, affirm the Order of the Court of Common Pleas of Berks County.


_____
**RENÉE COHN JUBELIRER,** Judge


Judges Simpson and Covey join this dissenting opinion.

_____

[3] While there is evidence of a previous commemorative revolver sale in 1989, the Majority rightly points out that there is no evidence in the record showing that the Policy was in effect at that time.  Leibensperger, __ A.3d at ___, slip. op. at 5 n.3.