IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denniston Family Limited Partnership, :
d/b/a Village Realty Associates, Ltd., :
               Petitioner :
                         :
           v. :
                         :
Pennsylvania Human Relations :
Commission, : No. 1886 C.D. 2017
               Respondent : Argued: September 14, 2018

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: December 21, 2018

Denniston Family Limited Partnership d/b/a Village Realty Associates, Ltd. (Village Realty) petitions for review of an adjudication of the Pennsylvania Human Relations Commission (Commission) holding Village Realty liable for retaliating against its former tenant, Jonathan Blaine (Blaine), as prohibited by Section 5(d) of the Pennsylvania Human Relations Act (Act).[1] The Commission

---

[1] Section 5(d) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, provides that,

> [i]t shall be an unlawful discriminatory practice . . . [f]or any person, employer, employment agency or labor organization to discriminate in any manner against any individual . . . *because such individual has made a charge*, testified or assisted, in any manner, in any investigation, proceeding or hearing *under this act*.

43 P.S. § 955(d) (emphasis added).

ordered Village Realty to make restitution to Blaine and ordered the payment of reasonable out-of-pocket expenses, compensatory damages and a civil penalty for violating the Act. On appeal, Village Realty contends that the Commission erred, as a matter of law, when it concluded that Blaine met his burden of proving retaliation based on the evidence presented. Upon review, we vacate and remand.

Blaine entered into a one-year lease to reside in a Village Realty-owned apartment complex commencing June 1, 2014 through May 31, 2015. Findings of Facts (F.F.) 7-9. At the end of the original lease period, the lease became a month-to-month tenancy. F.F. 9. In January 2015, Blaine's therapist prescribed an emotional support animal and Blaine called Village Realty to request permission to have an animal live with him. F.F. 10-11. Village Realty told Blaine to provide the prescription for the animal and everything would be fine. F.F. 12; Reproduced Record (R.R.) 14a. Blaine provided Village Realty with the prescription and subsequently purchased a dog. F.F. 13-14. In or around March 2015, the apartment manager went to Blaine's apartment to inform him that he could either vacate the apartment within 30 days or remove the dog he had purchased. F.F. 22. Blaine then filed a complaint with the Commission alleging that Village Realty was not allowing him to have an emotional support animal. F.F. 23. On April 22, 2015, Village Realty signed an agreement settling the complaint, and Blaine subsequently executed the agreement on April 24, 2015. F.F. 24-25. Pursuant to the agreement, Blaine was allowed to have an emotional support animal in the apartment he was renting. F.F. 26.

Village Realty received no complaints about Blaine's emotional support dog from January 2015 until April 2015. F.F. 27. Around the time the parties resolved the initial complaint with the Commission, Village Realty, through

2

Bridgett McAuliffe (McAuliffe) began to send Blaine letters, regularly, pertaining to the care of his dog. Blaine's next door neighbor testified that he contacted the on-site manager at least three times regarding complaints about "dog waste" and spots in the yard where "a dog had gone." F.F. 46. From May through June 2015, McAuliffe sent Blaine six letters. Three of these letters, dated April 14, April 29 and May 27, directed Blaine to "immediately" clean up the dog waste and "dispose of it properly each and every time the animal goes." F.F. 28-29, 35-36 & 43; R.R. 208a, 210a & 212a. McAuliffe sent Blaine two letters, dated April 16 and June 16, instructing Blaine not to place the dog waste bags outside, to keep them inside his apartment or immediately place them in the dumpsters, and to clean up all of it "immediately." F.F. 32 & 44; R.R. 172a & 213a. McAuliffe also sent Blaine a letter, dated May 13, regarding a complaint of his dog "barking and crying all day." F.F. 40; R.R. 211a.

In response to these letters, Blaine contacted Village Realty by leaving a message to call him but no one returned his call. F.F. 30-31 & 34. Blaine sent a letter to Village Realty, dated May 1, 2015, explaining that he attempted to call Village Realty regarding the complaints relating to the waste. F.F. 38. Additionally, Blaine sent a letter dated May 21, 2015 referencing the complaint relating to noise. F.F. 41. Village Realty did not respond to Blaine's letters. F.F. 39 & 42.

By letter dated July 1, 2015, McAuliffe wrote to Blaine giving him 60 days' notice that Village Realty intended to take possession of Blaine's apartment on August 31, 2015, F.F. 48, thereby precluding Blaine from continuing the month-to-month lease, as his one-year lease expired on May 31, 2015. F.F. 9. On July 30 or 31, 2015, Blaine moved out of his apartment, F.F. 53, and subsequently filed a

3

complaint with the Commission alleging that Village Realty refused to renew his lease in retaliation for having filed a prior complaint.

After a hearing on the retaliation complaint, the hearing examiner proposed the following conclusions of law:

> 6. Filing a Complaint with the [Commission] is a protected activity under the [Act].
>
> 7. Blaine has established a prima facie case of retaliation.
>
> 8. Village Realty offered a legitimate non-discriminatory reason for failing to renew Blaine's lease.
>
> 9. Blaine has proven that Village Realty's reason for failing to renew his lease is a pretext for unlawful retaliation.

Conclusions of Law (C.L.) Nos. 6-9. The hearing examiner recommended an order requiring Village Realty to cease and desist from retaliating against "anyone who engages in protected activity under the [Act]," and to pay damages totaling $8,333.67 to cover out of pocket expenses, compensatory damages for Blaine's embarrassment and humiliation, and the payment of a civil penalty. On November 27, 2017, the Commission issued an order approving and adopting the hearing examiner's findings of fact, conclusions of law and proposed order in total. R.R. 247a-48a. On December 27, 2017, Village Realty petitioned this Court for review.[2]

---

[2] This Court's scope of review of a Commission matter is whether the adjudication is in accordance with law, whether constitutional rights have been violated or whether the findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Spanish Council of York, Inc. v. Pa. Human Relations Comm'n*, 879 A.2d 391, 397 n.15 (Pa. Cmwlth. 2005).

4

On appeal, Village Realty asks this Court to reverse the Commission's order because the Commission erred when it concluded that Blaine established a *prima facie* case of retaliation, C.L. 6, and that Blaine established that Village Realty's reason for failing to renew his lease was a pretext for unlawful retaliation, C.L. 9. Village Realty's Brief at vii. In response, the Commission asserts that the Commission's legal conclusions are supported by the law and the facts of record and, therefore, the award of damages to Blaine was appropriate. Commission's Brief at 10 & 15.

Section 5(d) of the Act provides that it "shall" be an unlawful discriminatory practice for any person to discriminate in any manner against any individual "*because such individual has made a charge*" under this Act. 43 P.S. § 955(d) (emphasis added). The regulations construing the Act provide, in pertinent part, that "[i]t is an unlawful discriminatory activity to . . . *[r]etaliate*, intimidate, threaten, interfere or discriminate against a person . . . *because the individual has made a charge*, testified or assisted in an investigation, proceeding or hearing *under the act* . . . ." 16 Pa. Code § 45.11(a)(5) (emphasis added).

To establish a *prima facie* case of retaliation under the Act, this Court has relied on the burden-shifting model established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).[3] The complainant bears the initial burden of proving by preponderance of the evidence a

---

[3] This model was adopted by our Supreme Court in *General Electric Corporation v. Pennsylvania Human Relations Commission*, 365 A.2d 649 (Pa. 1976), for purposes of discrimination cases brought under the Act. *Spanish Council*, 879 A.2d at 397 n.16; *Canteen Corp. v. Pa. Human Relations Comm'n*, 814 A.2d 805, 810 (Pa. Cmwlth. 2003) (explaining that the *McDonnell Douglas* test is a burden-shifting test to establish discrimination where a complainant has no direct proof of discrimination).

5

*prima facie* case. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (explaining the *McDonnell Douglas* burden-shifting model).

> The complainant establishes a *prima facie* case by showing that: (1) the complainant engaged in a protected activity; (2) the respondent was aware of the protected activity; (3) that subsequent to participation in the protected activity complainant was subjected to an adverse action by the respondent; (4) and that there is a causal connection between participation in the protected activity and the adverse action.

*Spanish Council of York, Inc. v. Pa. Human Relations Comm'n*, 879 A.2d 391, 397 (Pa. Cmwlth. 2005). Once a complainant makes a *prima facie* case, the respondent has a production burden in which it must articulate a legitimate non-discriminatory reason for taking the alleged adverse action. *Id*. If the respondent does so, then the complainant is given the opportunity to prove that the respondent's articulated reason is a pretext for discrimination. *Id*.

Village Realty initially asserts that the Commission erred by concluding that Blaine established a *prima facie* case of retaliation.[4] The purpose of the *prima facie* showing is to "eliminate the most common nondiscriminatory reasons" for the adverse action. *Allegheny Hous. Rehab. Corp. v. Pa. Human Relations Comm'n*, 532 A.2d 315, 318 (Pa. 1987) (citing *Burdine*, 450 U.S. at 254); *see also Leibensperger v. Carpenter Tech., Inc.*, 152 A.3d 1066, 1075-76 (Pa.

---

[4] We note that the focus of the case before the Commission, and this Court, was whether Blaine met his burden of showing the fourth prong of his *prima facie* case, *i.e.*, a causal connection between participation in the protected activity and the adverse action. The parties do not dispute that: Blaine engaged in protected activity by filing the complaint with the Commission; that Village Realty was aware of the complaint; and that after filing the complaint Village Realty refused to renew Blaine's lease. Further, the parties do not dispute that the refusal to renew the lease was an adverse action.

Cmwlth. 2016) (explaining that complainant must produce facts which a "reasonable factfinder" could conclude that the circumstances raise an inference of discrimination (citation omitted)). Further, our Supreme Court explained:

> [i]n the interest of having the ultimate question of discrimination resolved on the merits rather than for procedural failings such as lack of specificity, given the importance of circumstantial proof in such cases, it is appropriate to the remedial purpose of the Act that the *prima facie* case not be an onerous one.

*Allegheny Hous.*, 532 A.2d at 319. Though the *prima facie* case is not to be an onerous requirement, our Supreme Court has also reminded us:

> Nothing about the Human Relations Act removes its operation from the bedrock concept of our jurisprudence that one who alleges wrongdoing must supply the proof. The [*McDonnell Douglas*] analysis is no more than an aid to evaluating the proof. If the [complainant] produces sufficient evidence that, if believed, and otherwise unexplained, indicates that more likely than not discrimination has occurred, the [respondent] must be heard in response. Absent a response, the presumption of discrimination arising from the [complainant's] *prima facie* case stands determinative of the factual issue of the case.

*Id*. at 319. Otherwise stated, if the respondent rests without producing evidence, the complainant must prevail if he or she has produced sufficient evidence to establish a *prima facie* case. *Allegheny Hous.*, 532 A.2d at 318; *see Burdine*, 450 U.S. at 254 (explaining that the *prima facie* case "raises an inference of discrimination [here retaliation] only because we presume these acts, if otherwise unexplained, are more

7

likely than not based on the consideration of impermissible factors" and creates a presumption that respondent unlawfully discriminated against complainant).

Here, the primary issue considered by the Commission was whether Blaine demonstrated the fourth element of his *prima facie* case, specifically, a causal connection between participation in the protected activity and the adverse action. To establish a causal connection, a complainant must prove either "(1) an unusually suggestive temporal proximity between the protected activity and alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3rd Cir. 2007). These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference. *Id.* Though the burden at this stage is minimal, the complainant here, Blaine, had to show facts to allow a factfinder to conclude that Village Realty terminated his lease *because* he filed a complaint with the Commission. He must show that the two events were causally related. *Id.*

The mere fact that one event occurred subsequent in time to another event is in and of itself insufficient to establish a causal connection between the two events. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3rd Cir. 1997) (explaining that timing of adverse action "standing alone" cannot establish a causal link of retaliation); *Quiroga v. Hasboro, Inc.*, 934 F.2d 497, 501 (3rd Cir. 1991) (rejecting argument that timing of adverse action alone creates an inference of retaliation). In *Krouse*, the court explained that the timing would have to be "'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Krouse*, 126 F.3d at 503; *see Spanish Council*, 879 A.2d at 399. However, the Commission in the case *sub judice* did not conclude that the temporal proximity between the filing of Blaine's

complaint with the Commission and the lease termination was unusually suggestive. R.R. 237a.

Rather, the Commission concluded that Blaine had met his *prima facie* case based on a "contextual analysis" of the events after Blaine filed the March complaint and Village Realty's refusal to renew the lease by letter dated July 1st. R.R. 236a-37a. The Commission explained:

> Here, a causal connection is established by more than temporal proximity. *A contextual analysis . . .* of what occurred after the filing of the earlier Compliant [sic] and the termination of Blaine's lease reveals that shortly before the earlier case was settled, Village Realty began to claim that Blaine's emotional support animal began to cause problems. In context, Village Realty was about to settle the earlier filing which would result in Village Realty being required to permit Blaine's emotional support animal to remain. In context, suddenly, circumstances surrounding Blaine's dog purportedly became a problem. From the moment Blaine brought his emotional support animal home to his apartment in January 2015 until mid-April 2015, there had been no problem. *Clearly, the filing of the earlier complaint and its settlement and the adverse action are not wholly unrelated.*

R.R. 236a-37a (citing *Clover v. Total System Services, Inc.*, 176 F.3d 1346 (11th Cir. 1999); *Wallace v. Board of Regents of the University System of Georgia*, 967 F. Supp. 1287 (S.D. Ga. 1997)) (emphasis added). But, the appropriate legal standard is not whether Blaine's March complaint and Village Realty's refusal to renew Blaine's lease are "not wholly unrelated." *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 n.6 (3rd Cir. 2000) (noting that the Third Circuit has not adopted the "less stringent causation" test that the protected activity and the adverse action

9

were not "wholly unrelated"). Rather, the law requires Blaine to produce evidence showing that Village Realty refused to renew the lease *because of* (or in response to) Blaine filing the March complaint with the Commission. *See Lauren W.*, 480 F.3d at 267 (causation requires a showing of a "causal relationship" between two events, *i.e.*, the protected activity and the retaliation). The complainant must produce evidence to show the necessary "connection," *i.e.*, "cause and effect," and may rely upon a broad array of evidence to do so. *Farrell*, 206 F.3d at 281 & 284. The Commission concludes that the two events are not wholly unrelated, but the Commission never determines whether Blaine established a cause and effect relationship between Blaine's filing of the complaint with the Commission and Village Realty's refusal to renew the lease. Thus, the Commission erred as a matter of law in failing to apply the appropriate legal standard when performing its contextual analysis. Accordingly, we vacate and remand this matter to the Commission to conduct an analysis consistent with this opinion.[5]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[5] We need not address Village Realty's proffered reason for its actions, because without knowing whether Blaine established a *prima facie* case, we do not know whether the burden ever shifted to Village Realty to present a legitimate non-discriminatory reason for taking the alleged adverse action. *See Spanish Council*, 879 A.2d at 397.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denniston Family Limited Partnership, :
d/b/a Village Realty Associates, Ltd., :
               Petitioner :
                   :
            v. :
                   :
Pennsylvania Human Relations :
Commission, : No. 1886 C.D. 2017
           Respondent :

## O R D E R

AND NOW, this 21st day of December, 2018, the November 27, 2017 order of the Pennsylvania Human Relations Commission (Commission) is VACATED, and the matter is REMANDED to the Commission to conduct an analysis consistent with this opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge