IN THE COMMONWEALTH COURT OF PENNSYLVANIA

H. Edwin Rodrock,      :
     Appellant   :
            :
  v.         : No. 1038 C.D. 2022
            :
Commonwealth of Pennsylvania, :
Public Utility Commission   : Argued: September 11, 2023

BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE ANNE E. COVEY, Judge
      HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER        FILED: October 18, 2023

   H. Edwin Rodrock (Appellant) appeals to this Court from the September 8, 2022 Order of the Court of Common Pleas of Dauphin County (Trial Court) denying Appellant's Motion for Post-Trial Relief and affirming the Trial Court's directed verdict in favor of the Pennsylvania Public Utility Commission (PUC) in Appellant's employment discrimination action. Appellant argues that the Trial Court failed to apply the correct legal standard when evaluating his age discrimination claim, and improperly disregarded evidence that the PUC's stated reasons for failing to give Appellant a promotion were merely pretextual. After review, we affirm.

## I. Background

   Appellant was hired by the PUC as an accountant in 1973, and worked there until his retirement in 2014. Reproduced Record (R.R.) at 79a; Supplemental Reproduced Record (S.R.R.) at 425b. In 2002, Appellant began working as Fixed Utility Financial Analyst Supervisor. S.R.R. at 426b. In October, 2005, the PUC began advertising an available position for a Fixed Utility Manager in the Fixed

Utility Bureau. *See* R.R. at 1a-4a. Appellant applied for that position but learned, in May, 2006, that he was not chosen. *Id.* at 71a. At the time of his rejection, Appellant was 59 years old; the employee chosen for the position, Paul Diskin, was 51 years old. S.R.R. at 404b. On November 6, 2006, Appellant filed a complaint with the Pennsylvania Human Relations Commission (PHRC) alleging that he had been denied the Fixed Utility Manager position due to unlawful age discrimination, in violation of the Pennsylvania Human Relations Act (PHRA).[1] R.R. at 161a. In a June 3, 2011 letter to Appellant, a PHRC official stated his opinion that the case should be dismissed. *Id.* at 161a-62a. Appellant requested a hearing on the matter but was informed in a subsequent letter, dated July 27, 2011, that the PHRC was officially closing the matter. *Id.* at 162a.

In October, 2011, the PUC began advertising an opening, in a newly created Bureau of Technical Utility Services, for a position also called Fixed Utility Manager (hereinafter, TUS Fixed Utility Manager). *See id.* at 54a-58a. Appellant applied for that position as well, but was informed in late 2011 that he had once again not been chosen. S.R.R. at 389b. By then, Appellant was 65 years old; the employee chosen for the position, Darren Gill, was 44 years old. *Id.* at 428b. Appellant filed a new complaint with the PHRC, in which he again alleged age discrimination, but that complaint was dismissed and closed by the PHRC in December, 2012. R.R. at 116a.

On July 26, 2013, Appellant filed a complaint in the Trial Court, in which he reasserted his claim of unlawful age discrimination regarding his 2006 non-promotion. *See* R.R. at 101a-107a. A second complaint followed on December 12, 2014, in which Appellant made similar allegations regarding his 2011 non-

---

[1] *See* Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963.

2

promotion. *See id.* at 112a-18a. The Trial Court consolidated the two matters in a February 22, 2017 order. *See id.* at 119a. The PUC then filed preliminary objections, in which it argued that the relevant two-year statute of limitations[2] began to run when Appellant received the June 3, 2011 letter from the PHRC official. *Id.* at 120a. The Trial Court granted the preliminary objections and dismissed Appellant's complaint in a June 26, 2017 order. *See id.* at 123a-24a. Appellant appealed to this Court, and we affirmed and remanded to the Trial Court. *See Rodrock v. Commonwealth*, 202 A.3d 187 (Pa. Cmwlth. 2019). We held that the June 3, 2011 letter to Appellant was ambiguous, and that Appellant reasonably believed that the two-year limitation period began to run with his receipt of the July 27, 2011 letter officially closing the matter. *Id.* at 194.

On remand, the Trial Court held a two-day, non-jury trial on January 19-20, 2022. *See* S.R.R. at 367b. Appellant presented his own courtroom testimony as well as testimony of his supervisor, Robert Bennett, who previously held the position for which Appellant had applied, and who wrote for Appellant a letter of recommendation. *Id.* at 368b. The PUC offered the testimony of Robert Wilson and Robert Rosenthal, two PUC managers who conducted the first round of interviews for the 2006 job opening, and who recommended Appellant for the position; of Karen Moury, who was the PUC's Executive Director at the time of the 2006 hiring decision; and of Diskin, who was hired for the 2006 position, and who later became responsible for the 2011 hiring process. *Id.*

---

[2] *See* Section 12(c)(2) of the PHRA, 43 P.S. § 962 (c)(2) (providing that an action "under this subsection shall be filed within two years after the date of notice from the [PHRC] closing the complaint").

3

## A. Appellant's Evidence

### 1. Appellant's Testimony

Appellant testified that he first became aware of the 2006 opening for a Fixed Utility Manager via internal e-mail and began working on his application immediately. R.R. at 328a. A primary reason that Appellant believed himself to be qualified for the position is that he already performed many of the necessary duties while filling in for his supervisor, Bennett (who held a Fixed Utility Manager position) over the previous two years. *Id.* at 327a-28a. As part of the hiring process, Appellant was interviewed twice: first by Wilson and Rosenthal, and then by Moury. *Id.* at 330a. At the outset, Appellant was concerned that he would be at a disadvantage during the hiring process due to his age, as he was just one year away from the normal retirement age for state employees. *Id.* at 329a. Accordingly, Appellant informed all of the interviewers that he intended to continue working for another five years. *Id.* at 330a.

Asked why he believed Moury chose Diskin for the promotion rather than Appellant, Appellant responded: "[s]he didn't like the work I had done in the past and she had her reasons for doing a second round of interviews to select someone other than me." S.R.R. at 419b. Appellant disagreed with Moury's conclusion regarding his abilities, and remained confident that he was the most qualified candidate for the job. R.R. at 329a. Soon after learning that Diskin had been chosen, Appellant filed a complaint with the PHRC. *Id.* at 331a. Appellant explained that when filling out the PHRC's complaint form, he indicated an allegation of age discrimination because it "was the only thing on the form . . . that was applicable." S.R.R. at 421b.

4

## 2. Bennett's Testimony

Bennett confirmed that Appellant assumed many of the Fixed Utility Manager's responsibilities while filling in for Bennett over the previous two years. R.R. at 282a. Bennett expressed enthusiasm for Appellant's job performance, remarking that he could "continually rely" on Appellant, and that Appellant "did a good job or more than a good job . . . more than [Bennett] had anticipated he'd be able to accomplish." Thus, as part of a routine performance review in July, 2005, Bennett gave him the highest marks in all categories and praised his performance when asked for comment.[3] On July 28, 2005, Bennett also wrote a letter of recommendation in which he praised Appellant's performance similarly.[4] However, Bennett acknowledged that the July, 2005 performance review was merely an evaluation of Appellant in his then-current position, and was not intended to be predictive of Appellant's performance in any higher position. S.R.R. at 373b. Bennett also acknowledged that he had written the letter of recommendation several months before the Fixed Utility Manager position became available, and that it was therefore written without knowledge of the job posting or of the other candidates for the opening. *Id.* at 374b.

---

[3] Bennett was referring in his trial testimony to an employee performance review that he completed in July, 2005, and which covered Appellant's work performance over the previous year. *See* R.R. at 5a-8a. In a section bearing the heading "Overall Rating," Bennett stated that Appellant "has performed in an outstanding manner during this rating period, particularly in view of the fact that one industry manager had been reassigned additional duties with another bureau and has left the bureau, [Appellant] consistently conducts himself as a professional and offers an excellent role model for all [Fixed Utility Staff]. [Appellant] has shown that he can step in during the absence of the Energy [M]an[a]ger to continue to complete assignments." *Id.* at 8a.

[4] *See* R.R. at 9a.

## B. The PUC's Evidence

### 1. Wilson and Rosenthal's Testimony

In 2006, Wilson and Rosenthal were the two PUC managers who were placed in charge of the initial interviewing process for the Fixed Utility Manager position. *Id.* at 380b. Accordingly, Wilson recalled, the two wrote a list of 14 interview questions and created a point-based evaluation system for each of the candidates. R.R. at 284a-85a. The system was designed to give each candidate a score with a maximum of 100 points, with 20 points based on the candidate's "work history," 8 points based on the candidate's "education and training," 36 points based on the candidate's "job knowledge," 24 points based on "interpersonal skills," and the remaining 12 points based on the candidate's perceived ability to deal "with structured environments." *Id.* at 288a. The evaluation process was not designed with the goal of reaching an ultimate hiring decision, which was Moury's responsibility; rather, the purpose was to make "recommendations." S.R.R. at 386b.

After the conclusion of the first round of interviews, Wilson recalled, he and Rosenthal assigned Appellant a score of 84 out of 100. R.R. at 292a. Wilson acknowledged that Diskin, who was ultimately chosen for the position, only received a score of 66 out of 100. *Id.* at 293a. Asked to explain why Diskin earned just 18 points out of the 36 points potentially awarded for job knowledge, Wilson remarked that "[h]is answers were just not very good with respect to job knowledge." *Id.* at 293a-94a. Wilson recalled that, when he informed Moury that Appellant received the highest score among the candidates, Moury exclaimed, "oh no, not [Appellant]." S.R.R. at 379b.

Asked why he believed that Moury rejected Wilson and Rosenthal's recommendation and chose Diskin instead, Wilson attributed her decision to "a

6

difference of opinion." *Id.* at 387b. Wilson rejected the contention that age was a factor in the decision and recalled that, over the course of the 25 years that he had known Moury, he never heard her make negative comments about anyone's age. *Id.* at 385b-86b. Similarly, Rosenthal denied ever hearing Moury making any remarks about Appellant's or anyone else's age, and characterized her as "a fair person." *Id.* at 415b.

## 2. Moury's Testimony

At the time of the 2006 hiring decision, Moury had been serving as the PUC's Executive Director for four years.[5] *Id.* at 406b. From 2004 to 2005, Moury would occasionally work with Appellant on various projects, and Moury gained an impression of Appellant as someone who was "dependable" and "a good soldier." *Id.* at 408b. Though Moury acknowledged that Appellant's performance as a supervisor was praiseworthy, she "didn't see the leadership that [she] felt was important for the [Fixed Utility Manager] position. *Id.* Moury explained that, in her estimation, someone in a managerial position "needs to be a strategic bigger thinker with strong leadership and management skills because they are the second person, they're second in command to the bureau director." *Id.* at 405b. To illustrate, Moury recalled one occasion when she expected Appellant to volunteer to take on certain responsibilities while a bureau director was unavailable, but Appellant did not do so. *Id.* at 409b.

After Wilson and Rosenthal concluded their interviews and recommended Appellant, Moury decided that the two had placed too much emphasis on technical knowledge, and not enough on the "leadership and management skills" necessary for the position. *Id.* at 405b. Thus, Moury decided to conduct a second round of

---

[5] At the time of her appointment, the title was Director of Operations. S.R.R. at 405b.

interviews on her own. *Id.* Moury explained that one of the purposes of a second interview was to give Appellant an opportunity to show that her prior impressions of his leadership skills were wrong. *Id.* at 408b. During Appellant's interview, however, Moury "didn't hear anything . . . that showed leadership skills"; rather, Appellant simply demonstrated his competence in what Moury referred to as "day-to-day supervision." *Id.* at 395b-96b. Thus, in Moury's own point-based evaluation of the candidates, Appellant only received a score of 5 out of 10 points on "leadership ability." *Id.* at 395b. By contrast, Diskin received a maximum score of 10 points, following an interview performance that Moury characterized as far more successful than Appellant's. *Id.* at 394b-95b. Accordingly, Moury drafted an April 7, 2006 memo to the PUC's human resources director stating Moury's intention to appoint Diskin to the position, and explaining her reasons for choosing him. *Id.* at 397b-98b; *see also* R.R. at 51a-53a.

### 3. Diskin's Testimony on the 2011 Non-Promotion

Following Moury's decision, Diskin began working for the PUC as Fixed Utility Manager in the Fixed Utility Bureau in May, 2006. S.R.R. at 431b. In 2011, the PUC conducted a reorganization that resulted in the creation of a new Bureau of Technical Utility Services, and named Diskin the new bureau's Director. *Id.*; *see also* R.R. at 300a. The PUC also created a new position for the TUS Fixed Utility Manager. S.R.R. at 432b. Diskin, who drafted the job description himself, explained in his testimony that he was looking for three primary sets of skills: (1) "general knowledge and expertise"; (2) the ability to take on new challenges; and (3) a background in emergency preparedness, since the TUS Fixed Utility Manager would be coordinating with the Pennsylvania Emergency Management Agency (PEMA) in times of emergency or disaster. *Id.* at 433b-34b.

8

Diskin collaborated with Wilson on the search for the TUS Fixed Utility Manager. R.R. at 353a. Appellant was one of four candidates who applied for the position. S.R.R. at 437b. To evaluate the candidates, Diskin and Wilson created another 100-point evaluation system, which reflected the criteria described by Diskin above. *Id.* Following a single round of interviews, Appellant received a score of 82 out of 100; the successful candidate, Gill, received a score of 85. *Id.* at 438b. According to Diskin, Gill's main advantage over Appellant was his extensive experience in emergency preparedness. *Id.* at 436b. In contrast to Appellant, Gill had spent 10 years as the PUC's Emergency Preparedness Liaison Officer, which meant that he "actually served shifts at [PEMA's] Emergency Operations Center." *Id.* at 437b. Accordingly, both Diskin and Wilson decided to choose Gill for the position. *Id.* at 432b.

### C. The Trial Court's Decision

In a February 18, 2022 Order, the Trial Court found in favor of the PUC and against Appellant on all claims. *See* Appellant's Br., App. A, Trial Court Opinion (Trial Ct. Op., 2/18/2022). The Trial Court explained that, in order to establish a *prima facie* case of discrimination, the plaintiff needs to show: (i) that he was over 40 years of age; (ii) that he was qualified for the position in question; (iii) that he suffered from an adverse employment decision; and (iv) that his replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Id.* at 3-4 (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006)). If the plaintiff succeeds, the Trial Court explained, then a "presumption of discrimination" arises, and the burden shifts to the PUC to "articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Id.* at 4 (citing *Kroptavich v. Pa. Power and Light Co.*, 795 A.2d 1048, 1055 (Pa. Super. 2002)). If such a reason is

9

articulated, then the burden shifts back to the plaintiff to show that the reasons proffered by the employer were merely pretextual. *Id.*

In its Opinion, the Trial Court stated that it entered "a directed verdict in favor of [the PUC]" with regard to the 2011 claim of age discrimination and that "the only decision that remains is for the 2006 incident." Trial Ct. Op., 2/18/2022, at 2. Regarding the 2006 allegation, the Trial Court found it "undisputed" that Appellant established a *prima facie* case of age discrimination, as each of the elements were clearly met. *Id.* at 4-5. Equally undisputed, according to the Trial Court, was that the PUC proffered "a legitimate, nondiscriminatory reason" that Appellant was not promoted to Fixed Utility Manager in 2006. *Id.* at 5. Thus, Appellant had to prove that the PUC's reasons for not promoting him were pretextual, and the Trial Court concluded that he failed to do so. *Id.* The Trial Court explained that it found Moury's testimony "credible" as to "why she thought that [Appellant] was not a good fit for the [Fixed Utility] Manager position." *Id.* Moury, the Trial Court stated, was "consistent in her reasoning, and she thought that management experience and skills were more important than job knowledge for the subject position." *Id.* The Trial Court noted that "even [Appellant] acknowledged" the fact that he was not promoted because Moury simply "did not like his work." *Id.* at 6. Appellant did not produce any "evidence, not even circumstantial evidence, to support an inference that [he] was not hired for the subject position because of his age." *Id.*

On February 28, 2022, Appellant filed a Motion for Post-Trial Relief, in which he requested that the Trial Court vacate its verdict with regard to both the 2006 and 2011 claims. *See* R.R. at 223a-32a. Therein, Appellant argued that the Trial Court had improperly disregarded a verdict sheet that he had proposed in favor of its own. *Id.* at 225a. Appellant also argued that the Trial Court should modify its Opinion

"to state in writing all the findings of fact and conclusions of law on which [it] is based." *Id.* at 227a. Furthermore, Appellant argued, the Trial Court failed to disclose what legal standard it had applied to the 2011 claim. *Id.* at 226a.

In its September 8, 2022 Order, the Trial Court stated that it was denying the Motion for Post-Trial Relief as to both incidents of alleged discrimination. *Id.* at 239a. Regarding the 2006 incident, the Trial Court referred to its February 18, 2022 Memorandum Opinion for the reasons that post-trial relief was denied. *Id.* Regarding the 2011 non-promotion, the Trial Court clarified that it had found Appellant to have "set forth a *prima facie* case of age discrimination" for that claim. *Id.* However, the Trial Court also found that the PUC had advanced a legitimate, nondiscriminatory reason for not promoting Appellant: that he was simply "not the best applicant for the job." *Id.* Since Appellant only provided "mere speculation" as to why the PUC's proffered reasons were pretextual, the Trial Court concluded that he failed to meet his burden on the 2011 claim as well as on the 2006 claim. *Id.* at 240a. This appeal followed.[6]

## II. Issues

On appeal, Appellant argues that the Trial Court failed to apply the proper legal standard in its analysis of the PUC's purported nondiscriminatory reasons for not promoting him in 2006 and in 2011. Appellant further argues that the Trial Court's findings and verdict regarding both the 2006 and 2011 claims were "contrary

---

[6] This Court's scope of review is limited to examining whether the findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law. *In re Ten Thousand Six Hundred Eighty Dollars*, 728 A.2d 403, 406 (Pa. Cmwlth. 1999). A trial court abuses its discretion if, in reaching a conclusion, the law is overridden or misapplied, or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will. *Id.*

to the weight of the evidence," which showed that unlawful discrimination occurred against him in both instances. Appellant's Br. at 13, 53.

## III. Discussion

Section 5(a) of the PHRA provides that it "shall be unlawful discriminatory practice" for any employer to discriminate based on an individual's age "with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 P.S. § 955(a). Claims brought under the PHRA are analyzed under the same standards as their federal counterparts. *Kroptavich*, 795 A.2d at 1055. Thus, to evaluate such claims, Pennsylvania courts follow the three-part burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 41 U.S. 792 (1973). *Id.*

### A. Stage One of the *McDonnell Douglas* Analysis: The *Prima Facie* Case

Under the *McDonnell Douglas* framework, a complainant must first establish a *prima facie* case of age discrimination by showing (i) that he was at least 40 years of age; (ii) that he was qualified for the position; (iii) that he suffered an adverse employment action; and (iv) that the position was awarded to someone sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). Central to our resolution of this issue is an acknowledgment that the burden on the complainant of presenting a *prima facie* case is "minimal." *Leibensperger v. Carpenter Techs.*, 152 A.3d 1066, 1075 (Pa. Cmwlth. 2016) (citing *Kroptavich*, 795 A.2d at 1055).

In the decision below, the Trial Court found it "undisputed that [Appellant] has established a *prima facie* case of age discrimination" regarding the 2006 non-promotion: he was over the age of 40, was qualified for "the position in question,"

12

did not receive the position in question, and the person hired was "sufficiently younger to permit a reasonable inference of age discrimination." Trial Ct. Op. at 4-5. In its September 8, 2022 Order denying post-trial relief, the Trial Court clarified its prior finding that Appellant had established a *prima facie* case as to the 2011 non-promotion as well.

We agree with the Trial Court that, regarding both claims of discrimination, Appellant has established each of the four elements of a *prima facie* case under the *McDonnell Douglas* analysis. In 2006, Appellant was 59 years of age, was qualified for the position in question (as indicated by Wilson and Rosenthal's recommendation after the first round of interviews), failed to secure the desired position, and was appreciably older than Diskin, who was only 51 years old at the time. In 2011, Appellant was 64 or 65 years of age, was qualified for the position in question, and was passed over in favor of a candidate who was approximately 20 years younger. The inquiry thus moves to the next stage.

**B. Stage Two of the *McDonnell Douglas* Analysis: The Legitimate, Nondiscriminatory Reason**

Upon the complainant's establishment of a *prima facie* case, a presumption of age discrimination arises, and the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the challenged employment decision." *Kroptavich*, 795 A.2d at 1055. At this stage, the employer's burden "is one of production, not persuasion, and thus involves no credibility assessment." *Id.* The employer is not required to *prove* that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action; rather, it must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons. *Willis v. UPMC Children's Hosp. of*

13

*Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). If the employer articulates a legitimate business explanation, then the presumption of discriminatory intent created by the employee's case is rebutted and the presumption "simply drops out of the picture." *Kroptavich*, 795 A.2d at 1055.

### 1. Stage Two and the 2006 Discrimination Claim

Instantly, the PUC asserts that it had declined to promote Appellant to Energy Manager in the Fixed Utility Bureau in 2006 because Moury, then the PUC's Executive Director, "believed that leadership skills and experience were far more important that technical, substantive knowledge." PUC's Br. at 7. At trial, Moury explained that the person working in the position would need "to be a stronger[,] bigger thinker with strong leadership and management skills," as the person would be "second in command to the bureau director." S.R.R. at 405b. The Trial Court thus found it "undisputed" that the PUC succeeded in proffering a legitimate, nondiscriminatory reason for Appellant's non-promotion. Trial Ct. Op., 2/18/2022, at 5.

On appeal to this Court, Appellant argues that Moury's courtroom testimony is contradicted by the April 7, 2006 memo that she wrote upon hiring Diskin. In that memo, Moury disclosed that "[e]xpertise in specific subject matters" was an insignificant factor in her hiring decision, "particularly in view of [the PUC's] plans to combine the Energy and Water divisions in the near future." Appellant's Br. at 11; *see also* R.R. at 51a. Appellant contends that the April 7, 2006 memo, not Moury's courtroom testimony, "constitutes the best evidence of the PUC's articulation of the justification for the selection of the significantly younger Diskin over Rodrock." Appellant's Br. at 12. The Trial Court erred as a matter of law when it credited Moury's courtroom testimony over the memo, Appellant reasons, because

14

the "contemporaneous justifications" stated in the memo are simply more reliable. *Id.* at 13.

Appellant's argument regarding the PUC's nondiscriminatory reasons is unavailing, for three reasons. First, Appellant appears to have mistaken the employer's burden of *production* at this stage with the burden of *persuasion*, which, "[a]t all times . . . rests with the plaintiff." *Smith v. City of Allentown*, 589 F.3d at 690. Because the PUC only had to articulate a legitimate business explanation, no credibility assessment of Moury's testimony was required. Second, Appellant fails to explain why the Trial Court is obligated to accept a document over courtroom testimony merely because of when the document was written. Indeed, this Court has clearly stated that there is *no* evidentiary principle that written documents are preferable to oral statements. *Nelson v. State Bd. of Veterinary Med.*, 938 A.2d 1163, 1171 (Pa. Cmwlth. 2007). Third, Appellant fails to establish how the contents of Moury's April 7, 2006 memo undermine her testimony in any meaningful way.[7]

Since Appellant advances no reasonable argument that the PUC failed to assert a legitimate, nondiscriminatory reason for his 2006 non-promotion,[8] we see

---

[7] Indeed, Appellant engages in "cherry-picking" when quoting from the April 7, 2006 memo in his Brief. For example, in the same paragraph where Moury referred to the relative insignificance of "[e]xpertise in specific subject matters," she clearly stated that "*the candidates' management skills and leadership abilities*" were a more important factor in her decision. R.R. at 51a (emphasis added). This is not at all incongruous with Moury's courtroom testimony that technical knowledge was less important for the position than "leadership and management skills." S.R.R. at 405b.

[8] Appellant briefly offers a second reason that the PUC's proffered reasons are illegitimate: that Moury's conclusion regarding his deficient leadership abilities is contradicted by his actual work history, which included serving as an acting manager for various periods prior to 2006. This argument is equally unpersuasive, however. In her courtroom testimony, Moury never suggested that Appellant was utterly *lacking* in management or leadership skills; indeed, she assigned Appellant 5 points out of a possible 10 in that category. *See* S.R.R. at 395b. Rather, Moury
**(Footnote continued on next page…)**

15

no error in the Trial Court's conclusion that the PUC successfully rebutted the initial presumption of discrimination as to the 2006 discrimination claim.

## 2. Stage Two and the 2011 Discrimination Claim

The PUC maintains that it declined to promote Appellant to the newly created position of TUS Fixed Utility Manager in 2011 for another legitimate, nondiscriminatory reason: that "experience in energy and emergency preparedness were necessary for the position." PUC's Br. at 14. The Trial Court explained in its September 8, 2022 Order that the PUC "set forth a legitimate[,] nondiscriminatory reason for not hiring [Appellant] for the subject position, namely that [he] was not the best applicant for the job." R.R. at 239a. We see no error in the Trial Court's conclusion, particularly since Appellant does not appear to dispute it in his Brief to this Court. Thus, our inquiry moves to the third and final stage.

## C. Stage Three of the *McDonnell Douglas* Analysis: Nondiscriminatory Reasons as Pretext

An employer that meets its burden of production under the second *McDonnell Douglas* stage shifts the burden back to the complainant, who then has an "opportunity to show that the legitimate reasons proffered by the employer were pretexts for what, in reality, was a discriminatory motivation." *Kroptavich*, 795 A.2d at 1055.

At the summary judgment phase, the complainant may meet his Stage Three burden in either of two ways. In the first, the complainant presents evidence from which a factfinder could reasonably disbelieve the employer's proffered reason for the adverse employment action, by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the reasons proffered by the

---

explained at length why, in her view, Diskin simply demonstrated *greater* leadership skills while working for his prior employer. *See id.* at 394b-95b.

16

employer. *Leibensperger*, 152 A.3d at 1077. In the second way, the complainant establishes pretext by pointing to evidence that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* The complainant may succeed in this respect by showing that (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably. *Id.*

The complainant who survives summary judgment faces a greater burden at trial. There, the complainant "must convince the factfinder that not only was the employer's proffered reason false, but the real reason was impermissible discrimination." *Id.* It is not enough for the factfinder to disbelieve the employer; the factfinder must also believe the complainant's explanation of intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993). Thus, the complainant must show that the illegitimate factor was a determinative, but-for cause of the adverse employment action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### 1. Stage Three and the 2006 Discrimination Claim

In its decision below, the Trial Court concluded "there is no evidence, not even circumstantial evidence, to support an inference that [Appellant] was not hired for the subjection position based on his age." Trial Ct. Op., 2/18/2022, at 6. The Trial Court explained that it found Moury "to be credible in her testimony as to why she thought that [Appellant] was not a good fit for the [Fixed Utility] Manager position." *Id.* at 5. Moury, the Trial Court continued, "was consistent in her

17

reasoning," "thought that management experience and skills were more important than job knowledge," and "had the final say in who was hired." *Id.*

On appeal, Appellant argues that Moury cannot be reasonably found to have testified credibly. According to Appellant, Moury's disparagement of Appellant's "technical knowledge" in favor of broader leadership skills demonstrated a lack of familiarity with the requirements of the job. The 10-point score that Diskin received for leadership skills was, in Appellant's view, "indefensible," especially considering that other, unsuccessful job candidates demonstrated better leadership abilities than Diskin. Appellant's Br. at 42. In support, Appellant offers the example of one unsuccessful candidate, whose answers to certain interview questions were characterized by Moury as "wordier" than others. *Id.* at 41 (citing R.R. at 347a). To the contrary, Appellant argues, that candidate's answers were "succinct." *Id.* Finally, Appellant takes issue with the Trial Court's observation that Moury had the "final say" in hiring decisions as Executive Director, arguing that Moury "never had the 'final say,' or authority," because she could not have been authorized to engage in unlawful discrimination. *Id.* at 46a.

Appellant's arguments are, once again, unavailing. In second-guessing Moury's assessment of the job requirements or the candidates' leadership skills, Appellant is essentially asking this Court to substitute his own credibility determinations for the Trial Court's; that is not our role. *See Merrell v. Chartiers Valley Sch. Dist.*, 51 A.3d 286, 293 (Pa. Cmwlth. 2012) (explaining that, in a bench trial, "the trial judge acts as a factfinder and has the authority to make credibility determinations," which "must be given the same weight and effect as a jury verdict"). Appellant's allegation that Moury exceeded her authority as Executive

Director by violating anti-discrimination law is similarly meritless, since it assumes as a premise exactly what Appellant has set out to prove with this litigation.

## 2. Stage Three and the 2011 Discrimination Claim

In the September 8, 2022 Order denying post-trial relief, the Trial Court explained that Appellant "produced no evidence to show pretext on [the PUC's] part" regarding the 2011 non-promotion, but only "speculation." Thus, the Trial Court concluded that "it was proper . . . to enter a directed verdict in favor of [the PUC] on [Appellant's] 2011 claim." R.R. at 240a.

On appeal, Appellant maintains that the Trial Court erred as a matter of law when it concluded that he failed to offer evidence that the reasons given for the 2011 non-promotion were pretextual. In support, Appellant refers to the two ways, summarized above, in which a complainant may meet his burden at the summary judgment stage. Appellant argues that he successfully met his burden in the second way, by demonstrating that the PUC "previously discriminated against" him. Appellant's Br. at 51 (citing *Leibensperger*, 152 A.3d at 1077). Referring to the two discrimination claims in this very matter, Appellant argues that there have been "two age discrimination cases against the PUC," which "constituted evidence of previous discrimination against" Appellant. *Id.* at 52.

We reject Appellant's argument for two reasons. The first is that, once again, Appellant fallaciously assumes as a premise the truth of his allegations. The second is that Appellant misstates the burden that he carries at this stage of the analysis. The "two ways" to establish pretext that this Court discussed in *Leibensperger* are only sufficient for a complainant to "survive summary judgment and proceed to a factfinder." 152 A.3d at 1077. In other words, Appellant would still need to prove that, "not only was the employer's proffered reason false, but the real reason was

19

impermissible discrimination." *Id.* Appellant does not even attempt to demonstrate that he met the appropriate burden at the trial level.[9] Thus, we see no error in the Trial Court's conclusion that the allegedly pretextual reasons advanced for the 2011 non-promotion amounted to no more than speculation.

### IV. Conclusion

For the foregoing reasons, we affirm the Trial Court.

_____
ELLEN CEISLER, Judge

---

[9] Appellant argues in a Reply Brief that, when evaluating his burden of proof under the third *McDonnell Douglas* stage, this Court should consider the reasoning of the Third Circuit in *Johnson v. Delaware County Juvenile Detention Center*, 545 Fed. App'x 135 (3d Cir. 2013) (unpublished). In that case, a 56-year-old Black male alleged age and race discrimination by his former employer pursuant to the PHRA as well as the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634. *Id.* at 136. A district court granted summary judgment on the age discrimination claim, on the ground that the plaintiff failed to show that age was the but-for cause of the plaintiff's determination. *Id.* at 139. The Third Circuit reversed, holding that the requirement of a but-for cause was "misplaced." *Id.*

As Appellant concedes, *Johnson* is a non-precedential, federal case, and is therefore not binding on this Court. To the extent that *Johnson* has persuasive value, we note that it concerns the plaintiff's burden of proof at the summary judgment stage, which is not at issue at this stage of the case.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| H. Edwin Rodrock,<br> Appellant | : | |
| | : | |
| | : | |
| v. | : | No. 1038 C.D. 2022 |
| | : | |
| Commonwealth of Pennsylvania,<br>Public Utility Commission | : | |
| | : | |

# **O R D E R**

AND NOW, this 18th day of October, 2023, the order of Court of Common Pleas of Dauphin County in the above-captioned matter, dated September 8, 2022, is hereby AFFIRMED.

_____

ELLEN CEISLER, Judge